IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD WILLIAMS, | ) | CASE NO.  1:20-CV-00805-BMB |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN JEFF NOBLE, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Reginald Williams ("Williams" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Williams is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Williams*, Cuyahoga County Court of Common Pleas Case No. CR-16-612202.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.    Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Williams' conviction as follows:

{¶ 2} In 2016, Williams was charged as follows: Count 1, rape in violation of R.C. 2907.02(A)(2), with one- and three-year firearm specifications; Count 2, complicity in violation of R.C. 2923.03(A)(2), with one- and three-year firearm specifications; Count 3, aggravated robbery in violation of R.C. 2911.01(A)(1), with one- and three-year firearm specifications; Count 4, kidnapping in violation of R.C. 2905.01(A)(2) with one- and three-year firearm specifications; and Count 5, kidnapping in violation of R.C. 2905.01(A)(4), with one- and three-year firearm and sexual motivation specifications.

{¶ 3} During pretrial proceedings, Williams filed a motion to dismiss based on preindictment delay. The trial court held a hearing on the motion and denied it. Williams also requested a competency evaluation, and the trial court referred Williams to the court's psychiatric clinic. The parties subsequently waived the competency hearing and stipulated to the court's psychiatric report in which the evaluating doctor opined that Williams refused or was unable to cooperate with the evaluation, so the doctor was unable to render an opinion as to Williams's competency. The trial court then ordered Williams to undergo an inpatient competency evaluation. Williams requested an independent competency evaluation. Both evaluating doctors opined that Williams was competent to stand trial, and the parties stipulated to the competency evaluations.

{¶ 4} Williams twice requested that his appointed counsel be disqualified and he be appointed new counsel, claiming that he had not seen discovery documents, his counsel was not arguing what he wanted in pretrial motions, and he did not "feel comfortable" with trial counsel. The trial court denied Williams's motion.

{¶ 5} The matter proceeded to a trial by jury, at which the following pertinent evidence was presented.

{¶ 6} T.B. testified that on May 18, 1997, she left work and headed to the bus stop at East 125th Street and St. Clair Avenue in Cleveland. As she waited for the bus, two unknown males approached her. One of the males had a scar on his face. One of the males pulled out a short shotgun. T.B. thought she might be shot if she tried to leave. The men demanded her belongings, and she gave them her cell phone and necklace. The men left, but came back. T.B. tried to run, but the men caught up to her and, with the gun pointed at her, told her to come with them or they would kill her.

{¶ 7} The men took T.B. to a nearby alley and put her in the backseat of a car. One of the men then sat in the front seat of the car and pointed the gun at T.B. while the other man vaginally penetrated her. Then, the men switched places: the man who had been raping her got into the front seat and pointed the shotgun at her while the other man vaginally penetrated her. Neither man used a condom.

{¶ 8} T.B. testified that she did not try to fight the men because she was scared the men would kill her. T.B. approximated that the assault lasted about "15 or 20" minutes.

2

{¶ 9} After the rape, the men let T.B. leave. She ran to a nearby gas station where she saw a friend, Sam, who took her to her mother's house. T.B.'s mother took her to the hospital where T.B. underwent a sexual assault examination.

{¶ 10} Cleveland Police Officer Bobby Rose ("Officer Rose") testified at trial that he and his partner at the time, Officer Gerald Wolf, were dispatched to the hospital to respond to a report of rape. The officers interviewed T.B. and Officer Rose recalled that T.B. was very shaken and crying when he first encountered her. T.B. described the suspects and reported that one of the males had a scar on his face. She did not know the men. T.B. told the officers the men initially approached her at the bus stop and demanded money and took her necklace. She also reported that she was raped in a church parking lot in the area of E. 124th Street and St. Clair Avenue, the men had a sawed-off shotgun, and they fled in a burgundy Oldsmobile.

{¶ 11} In 2016, Dan Clark ("Clark"), an investigator with the Cuyahoga County Prosecutor's Office Sexual Assault Kit Task Force, was assigned to investigate the case. As part of his investigation, Clark reviewed the original police report and discovered that, in 2006, a preliminary DNA association was made between Williams's DNA and the forensic evidence in T.B.'s sexual assault kit. Clark secured a search warrant, took a buccal swab of DNA from Williams, and submitted the swab to the Ohio Bureau of Criminal Investigation ("BCI") to: (1) compare to the evidence contained in T.B.'s sexual assault kit and (2) confirm the preliminary association of Williams's DNA to the DNA profile contained in the kit.

{¶ 12} Clark testified that as part of the investigation, a blind administrator, who was another investigator not associated with the case, showed T.B. a "six-pack" photo array that included a photo of Williams to see if T.B. recognized anyone as one of the men who assaulted her. T.B. was unable to identify anyone as one of her assailants.

{¶ 13} Stacy Violi ("Violi"), a BCI forensic scientist, compared the buccal swab of DNA extracted from Williams and the biological evidence extracted from T.B.'s sexual assault kit. Violi's DNA report, dated December 29, 2016, identified Williams as a major contributor to the seminal fluid extracted from a cutting of the thigh area of T.B.'s pants and from the skin-stain swabs lifted from T.B. An unknown male DNA profile was identified as a major contributor to the seminal fluid found on a swab and a cutting of T.B.'s underwear; Williams and T.B.'s boyfriend at the time were excluded as the major contributor of those samples.

{¶ 14} Williams testified that he had been to prison six times and had convictions for drug offenses, felonious assault, and aggravated robbery, improper handling of firearm in a motor vehicle, having a weapon while under disability, and carrying a concealed weapon. According to Williams, he knew T.B. and had known her since the summer of 1995 when he met her at a festival in his neighborhood and asked for her pager number. He testified that he and T.B. started having sex that summer and

the relationship lasted for one or two months. He lost touch with her until 1997 when he saw her where she worked and the two started having sex again.

{¶ 15} According to Williams, he picked T.B. up from work on May 18, 1997, with his friend Wayne. Williams did not know Wayne's last name or where he lived in 1997 or currently. They drove to Williams's house and he and T.B. had sex inside his house while Wayne waited in the car. They then drove T.B. to the corner of her street and let her out.

{¶ 16} Williams testified that he saw T.B. again in 2010 and T.B. told him about the "DNA hit" but that he "ain't got nothin' to worry about." According to Williams, T.B. was telling people Williams had raped her in retaliation for money he had borrowed from her and refused to pay back. T.B. also sent him letters in jail, but he did not keep any of the letters. He had to throw them out or other inmates would steal them.

{¶ 17} Williams testified that he told Clark that he did not remember anything that happened in 1997 because he was doing too many drugs at the time. He also testified that he tried to hang himself while he was in jail the night before his first trial date because he was stressed and had a lot of responsibilities, and it was not the first time he tried to kill himself. He also admitted that he lied to a doctor previously about claiming that he tried to kill himself as a teenager.

{¶ 18} The jury acquitted Williams of aggravated robbery and convicted him of the remaining charges and specifications. The trial court sentenced him to a total of 23 years in prison.

*State v. Williams*, 2018-Ohio-3368, 2018 WL 4043306, at **1-3 (Ohio Ct. App. Aug. 23, 2018).

## II.    Procedural History

### A.    Trial Court Proceedings

On December 7, 2016, the Cuyahoga County Grand Jury indicted Williams on the following charges: one count of rape in violation of O.R.C. § 2907.02(A)(2); one count of complicity in violation of O.R.C. § 2923.03(A)(2); one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(1); one count of kidnapping in violation of O.R.C. § 2905.01(A)(2); and one count of kidnapping with a sexual motivation specification in violation of O.R.C. § 2905.01(A)(4).  (Doc. No. 11-1, Ex. 1.)  All counts carried a one-year and a three-year firearm specification.  (*Id.*)  These offenses were committed in May 1997.  (*Id.*)  White plead not guilty to all charges.  (Doc. No. 11-1, Ex. 2.)

4

On February 22, 2017, Williams moved to dismiss the indictment because "the State's unjustifiable pre-indictment delay" had prejudiced his defense.  (Doc. No. 11-1, Ex. 3.)  Williams argued that in 2006, BCI notified the Cleveland Police Department that a state "hit notification" had identified Williams as a potential match to the victim's rape kit, but an additional DNA sample from Williams was necessary to verify the findings. (*Id.*)  White further argued the police did not further investigate this case for 10 years, though Williams was in the Cuyahoga County jail at least 12 times.  (*Id.*)  Williams was charged over nineteen years after the commission of the offenses.  (*Id.*)  White asserted the delay resulted in missing or unavailable evidence, specifically: (1) his inability to recall his whereabouts on the day in question; (2) the inability to question "Sam," a person familiar with the victim who was across the street at the time of the assault; (3) the inability to locate the vehicle used in commission of the offense to have it tested for evidence that would contradict the State's evidence; and (4) the victim's fading memory.  (*Id.*)

On March 6, 2017, the State filed a response in opposition.  (Doc. No. 11-1, Ex. 4.)  On March 20, 2017, after holding a hearing on the motion to dismiss, the trial court denied Williams's motion.  (Doc. No. 11-1, Ex. 5.)

On March 22, 2017, Williams filed a motion to disqualify counsel for failing to raise several arguments in the motion to dismiss hearing and for showing bias.  (Doc. No. 11-1, Ex. 6.)  On March 28, 2017, the trial court referred Williams to the court psychiatric clinic for a determination regarding Williams' competency to stand trial.  (Doc. No. 11-1, Ex. 7.)  In a report dated April 18, 2017, Dr. Julian opined Williams either refused or was unable to cooperate with the examiner, so the trial court ordered Williams be committed to an in-patient facility for a competency evaluation.  (Doc. No. 11-1, Ex. 8.)  On June 8, 2017, the trial court granted Williams's motion for an independent psychiatric evaluation.  (Doc. No. 11-1, Ex. 9.)  On July 17, 2017, the parties stipulated to the two competency evaluations that found

Williams competent to stand trial.  (Doc. No. 11-1, Ex. 10.)  That same day, the trial court denied Williams's motions to disqualify counsel. (*Id.*)

The case proceeded to jury trial on July 17, 2017.  (*Id.*)  On July 21, 2017, the jury returned its verdict, finding Williams not guilty of aggravated robbery but guilty of all other charges.  (Doc. No. 11-1, Ex. 12.)

On July 28, 2017, Williams again moved to disqualify counsel. (Doc. No. 11-1, Ex. 13.)  On August 28, 2017, the trial court referred Williams to the court psychiatric clinic for an HB 180 evaluation. (Doc. No. 11-1, Ex. 14.)

On August 29, 2017, the state trial court held a sentencing hearing.  (Doc. No. 11-1, Ex. 15.)  The trial court sentenced Williams to eight years in prison for rape, plus three consecutive years for the firearm specifications; three years in prison for complicity, with the firearm specification merging with the rape firearm specification; three years in prison for kidnapping, with the firearm specification merging with the rape firearm specification; and three years in prison, plus three consecutive years, for kidnapping with sexual motivation.  (*Id.*)  All sentences were to be served consecutively for an aggregate prison term of 23 years.  (*Id.*)

On November 14, 2017, Williams waived his HB 180 hearing and agreed to be classified as a sexually oriented offender.  (Doc. No. 11-1, Ex. 16.)

**B.** **Direct Appeal**

Williams, through counsel, filed a timely notice of appeal to the Eighth District Court of Appeals. (Doc. No. 11-1, Ex. 17.)  In his appellate brief, Williams raised the following assignments of error:

I.   The trial court erred when it denied Williams['s] motion to dismiss due to a nineteen-year preindictment delay.

II.  The trial court erred when it failed to grant a mistrial after there was an outburst in the courtroom where Williams blurted out that he did not expect the victim to appear for trial. (See Tr. At 469).

6

III.     Williams was denied his right to the effective assistance of trial counsel as guaranteed to him by the Sixth Amendment to the U.S. Constitution and Article 1, Section 10, of the Ohio Constitution.

IV.     The convictions for the firearm specifications were against the manifest weight of the evidence and not supported by sufficient evidence.

V.      The trial court erred when it permitted testimony that Williams tried to hang himself the night before his first trial and when it admitted pictures of Williams['s] jail cell.

VI.     The trial court erred when it incorrectly merged the counts for sentencing.

VII.    The trial court erred when it did not grant Williams's motion to disqualify appointed counsel.

VIII.   The convictions were not supported by sufficient evidence due to a lack of identification testimony.

IX.     The convictions were against the manifest weight of the evidence because Williams was not conclusively identified as the perpetrator.

X.      The trial court erred when it tried Williams as an adult without any bindover proceedings when he was seventeen years old at the time of the alleged crimes.

(Doc. No. 11-1, Ex. 18.)  The State filed a brief in response (Doc. No. 11-1, Ex. 19), to which Williams replied.  (Doc. No. 11-1, Ex. 20.)

On August 23, 2018, the Ohio Court of Appeals affirmed the judgment of the trial court.  (Doc. No. 11-1, Ex. 21.)  *See also State v. Williams*, 2018 WL 4043306.

On September 25, 2018, Williams, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 11-1, Ex. 22.)  In his Memorandum in Support of Jurisdiction, Williams raised the following Proposition of Law:

I.      A criminal defendant who raises the issue of "actual prejudice" after a preindictment delay, is not required to show that the lost evidence is exculpatory. Rather, the defendant must show that the lost evidence would render some assistance in defending the charges.

(Doc. No. 11-1, Ex. 23.)  The State did not file a response.  (Doc. No. 11-1, Ex. 24.)

7

On December 12, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 11-1, Ex. 25.)

## C.    Delayed Appeal to Ohio Supreme Court

On February 6, 2019, Williams filed a letter from the Ohio Supreme Court dated October 12, 2018, with the Cuyahoga County Clerk of Courts.  (Doc. No. 11-1, Ex. 26.)  With the letter, the Ohio Supreme Court clerk returned Williams' *pro se* appeal to the Ohio Supreme Court for being untimely and advised Williams he would need to file a motion for a delayed appeal.  (*Id.*)  Attached to this letter was an application for reopening Williams' direct appeal under App. R. 26(B).  (*Id.*)

On March 4, 2019, Williams, *pro se*, filed a notice of appeal and a motion for leave to file a delayed appeal in the Ohio Supreme Court.  (Doc. No. 11-1, Ex. 27.)  Williams acknowledged that his counsel had timely filed a direct appeal in the Ohio Supreme Court, but he complained that counsel had only raised one proposition of law—even though ten assignments of error had been raised in the appellate court—and counsel had not informed Williams of that until three months later.  (*Id.*)  Williams argued that these omissions constituted ineffective assistance of counsel.  (*Id.*)

On May 1, 2019, the Ohio Supreme Court denied Williams's motion for leave to file a delayed appeal.  (Doc. No. 11-1, Ex. 28.)  *See also State v. Williams*, 2019-Ohio-1536, 121 N.E.3d 408 (Ohio 2019).

## D.    Delayed Application to Reopen Appeal under Ohio App. R. 26(B)

On July 17, 2019, Williams, *pro se*, filed a delayed Application to Reopen Appeal Pursuant to Ohio App. R. 26(B).  (Doc. No. 11-1, Ex. 29.)  Williams' Application raised the following arguments that were not considered on appeal due to appellate counsel's ineffective assistance:

I.    There was an abuse of discretion when the trial court's decision reached beyond constitutional thresholds.

8

II.    The trial court denied appellant the Sixth Amendment constitutional right to an impartial trial - to confront witnesses against accusations & obtain witnesses in his favor.

III.    The defendant was denied due process where expert witness was precluded to meet the *Daubert* standard required in a fundamentally fair trial.

IV.    The trial court denied the 5th Amendment constitutional right to due process - limiting substantive evidence of presumption of innocence - placing an impermissible burden upon exercise of the 5th Amendment.

(*Id.*)  The State filed an opposition to reopening.  (Doc. No. 11-1, Ex. 30.)

On November 20, 2019, the Ohio Court of Appeals denied Williams' delayed application for reopening his appeal, finding that the application was untimely, and Williams failed to demonstrate good cause for the untimely filing.  (Doc. No. 11-1, Ex. 31.)  *See also State v. Williams*, 2019-Ohio-4780, 2019 WL 6248496 (Ohio Ct. App. Nov. 20, 2019).

On January 3, 2020, Williams, *pro se*, filed a Notice of Appeal with the Ohio Supreme Court.  (Doc. No. 11-1, Ex. 32.)  In his memorandum in support of jurisdiction, Williams raised the following propositions of law:

I.    The Appellant was denied due process when there was an abuse of discretion when the trial court's decision reached beyond constitutional thresholds.

II.    The Appellant was denied due process of law when the appellant was denied the Sixth Amendment right to an impartial trial where appellant was denied to confront witnesses against accusations & obtain witnesses in his favor.

III.    The appellant was denied due process of law where expert witness was precluded to meet constitutional standards.

IV.    The appellant was denied due process of law when he was denied constitutional Fifth Amendment right—limiting substantive evidence of presumption of innocence—placing an intolerable burden upon exercise of the Fifth Amendment.

(Doc. No. 11-1, Ex. 33.)  The State waived filing a memorandum in opposition.  (Doc. No. 11-1, Ex. 34.)

9

On March 3, 2020, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (Doc. No. 11-1, Ex. 35.) *See also State v. Williams,* 2020-Ohio-647, 140 N.E.3d 743 (Ohio 2020).

**E.    Federal Habeas Petition**

On March 4, 2020,[1] Williams filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**: The petitioner was denied due process of law when "actual prejudice" occurred after a preindictment delay. The petitioner was not required to show that the lost evidence is exculpatory. Rather, the defendant must show that the lost evidence would render some assistance in defending the charges.
>
> > **Supporting Facts**: An unjustified delay between the commission of the alleged offense and the state's indictment, which resulted in actual prejudice to the accused, violating the right to due process. The petitioner, Reginald Williams was indicted for rape on December 6, 2016. The alleged offense, the state avers occurred on May 18, 1997, over 19 years earlier. Astonished and flabbergasted, the petitioner went to trial with the factual and theoretical premises that any sexual activity was always consensual conduct. There existed two witnesses whose availability dissipated due to the passage of time that could have exonerated the petitioner as the victim could not recall many details of her sexual encounters. Thereafter, the trial court proceeded to the issue of pre-indictment delay which set forth the analysis whereby an accused must first present evidence of actual prejudice. If actual prejudice is shown, the burden then shifts to the state to procure evidence of a justifiable reason for the delay. There were no witnesses to the event other than the victim. The victim was shown a photo array, but could not make an identification with a hundred percent certainty. There was DNA that was taken from the victim and for that DNA did the victim based her testimony. DNA is not the commentary of facts, nor is an admission to a crime. A man named "Sam" took the victim home after the alleged incident. The victim knew that "Sam" was the cousin of her sister's ex-husband. Mr. Williams testified that the victim and him met in the Summer. Thereafter, they began a relationship and eventually led to having consensual sex. After some time,

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until April 13, 2020, Williams states that he placed it in the prison mailing system on March 4, 2020. (Doc. No. 1-2 at 5.) Thus, the Court will consider the Petition as filed on March 4, 2020. The Court notes Williams states another inmate placed his Petition in the prison mailing system in December 2019, but it was held for 60 days. (*Id.* at 4-5.)

Mr.Williams and the victim lost contact and about two years later resumed the relationship that was sexual in nature. Mr. Williams testified that the victim contacted him via pager. Mr. Williams testified that him and a man named Wayne picked up T.B. after T.B. reached out to him. Williams testified that Wayne died in 2012, and could have provided a substantive amount of exculpatory evidence. Mr. Williams testified that he did not see T.B. again until 2010, when he encountered her in a bar on Superior Avenue in Cleveland, Ohio. They again began meeting up for a sexual relationship. Williams flabbergasted from the accusations testified that he borrowed $2,200 dollars from T.B. and did not pay her, portentous for a made-up event.

There were several witnesses who were unavailable for Williams' trial. "Sam" who was the cousin of T.B. sister's ex-husband could have testified to the demeanor of T.B. This would have been critical to the defense evidence. At trial, there was a dispute as to when T.B. first reported this rape in contrast to when she left work that day. The record and witnesses from her job was out of reach to be subpoenaed due to the passage of time. Thus, the proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against the Petitioner, and thereby aid in establishing a defense, satisfies the due-process requirement of actual prejudice.

**GROUND TWO**: The Petitioner was denied due process of law when trial court erred when it failed to grant a mistrial after there was an outburst in the courtroom where Williams blurted out that he did not expect the victim to appear for trial.

**Supporting Facts**: During trial, the Petitioner had an outburst in the courtroom. Due to the potential bias and prejudice, defense counsel moved the trial court for a mistrial. When an emotional outburst takes place in court, the issue is whether the outburst deprived the accused of a fair trial by improperly influencing the jury. As the state called T.B. (the alleged victim) as a witness, Williams had an outburst in the courtroom in the presence of the jury. Mr. Williams exclaimed, "you just wrote me and said you weren't coming. I know this woman - we have been having sex since we were 15 years old..."

The factual question to be resolved when absence of clear indecorum is the duty of the trial court to determine alarm, disturbance, shocked or moved by the outburst or whether the incident was of such a nature that it necessarily influenced ultimately the verdict of innocence or guilt. This was an extremely prejudicial-serendipitous outburst that completely removed any possibility of Mr. Williams having a fair and impartial trial. The trial court instructed the jury to disregard the incident, but failed to inquire of the jury as to whether they could remain fair and impartial. It was disclosed that T.B. and Mr. Williams had been communicating while Mr. Williams was in jail. It was further disclosed that T.B. indicated that she was not going to show up for trial (as the Petitioner was innocent).

11

Analogously, the trial court shall determine, as a question of fact, whether the demonstration deprived the jury to function properly. The jury might as well felt that Mr. Williams unanticipated outburst was intimidating or an ominous opportune to intimidate the witness.

**GROUND THREE**: The Petitioner was denied due process of law when errors, omissions, and failure to object denied Williams his Sixth Amendment right to the effective assistance of trial counsel as guaranteed depriving him of a fair trial.

> **Supporting Facts**: The Petitioner assumes several instances of ineffective assistance of counsel. Trial counsel failed to move for a Motion to Suppress. Trial counsel failed to cross-examine DNA expert on admission of consensual sex in relation to the DNA. Trial counsel failed to disclose discovery to the Petitioner. Trial counsel failed to investigate, prepare or file the necessary motion for continuance for the case, as the case was docketed as closed.

**GROUND FOUR**: The Petitioner was denied due process of law when convictions for firearm specifications were against the evidence and not supported by sufficient evidence.

> **Supporting Facts**: There is no tangible facts of a firearm used in the commission or transaction of this alleged offense. T.B. who openly admitted that she could not remember pertinent details of that day; the time of work, the vehicle, hospitalization...in fact, she simply relied on DNA to extort the plot of events. The inquiry is whether the flummoxed testimony would establish sufficiency of an operable firearm brandished or in possession of the accused.

**GROUND FIVE**: The Petitioner was denied due process of law when the trial court erred when it permitted testimony that Williams tried to hang himself the night before his first trial and admitting pictures of Williams jail cell.

> **Supporting Facts**: Evidence that is relevant have the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury – evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

In the United States Supreme Court dissertation, the Court expressively recognized that, the sight of shackles and gags might have a significant effect on the jury's feelings about the accused: The evidence flaunted in front of the jurors, pictures of the Petitioner's cell, and evidence that the Petitioner tried to kill himself had no relevance; It was merely discriminatory and persuasive that Williams would rather

12

had died, than jeopardize a more likelihood of being found guilty of the charged offenses. Moreover, this inflammatory suggestion and display of photographs was extraordinarily partial, calculated to remove the presumption of innocence, reasonable doubt, and the enthusiasm of fundamental fairness.

**GROUND SIX**: The Petitioner was denied due process of law when unconstitutionally subjected to multiple punishment in violation of the Fifth Amendment where the trial court failed to merge sentences where consecutive sentences are imposed.

**Supporting Facts**: The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against the imposition of multiple punishments for offenses of similar import. This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution and acquiesce by Article I, Section 10 of the Ohio Constitution.

The Rape and the Complicity thereof, should have merged. Legally, the complicity should have been *nolle pros*. An attendant offender that was purported to be accompanying in this production was never charged or convicted. Although DNA exist, the attendant offender identity was never disclosed. The counts of kidnapping should have merged with the count of rape. One of the kidnapping charges was related to a robbery, for which the Petitioner was found not guilty. Finally, the two counts of kidnapping should have colluded to each other protecting the unconstitutional subjection of multiple punishment - when multiple punishment are imposed in the same proceeding- the Double Jeopardy Clause does more than preventing the trial court from prescribing greater punishment than a legislative intent, absent a more specific legislative oratory, Ohio statutes are the primary indication of the Ohio General Assembly's intent to prohibit and proscribe multiple punishments for two or more offenses resulting from the same transaction as a series of continuous acts bound together by time, space, and purpose towards a single objective.

**GROUND SEVEN**: The Petitioner was denied due process of law when the trial court structurally erred in denying the Sixth & Fifth Amendment constitutional right to choice of counsel and denying Williams's motion to disqualify appointed counsel.

**Supporting Facts**: The Petitioner continually complained about the deficient performance of his trial attorneys: that included amongst voluminous issues; their failure to consult with their client, noting that he and his lawyers communication was "not up to par"; Attorneys refusal to share or convey the crust of discovery; to file motions as to make vigilant Notice, and accusations of offenses against him; The Petitioner also exclaimed his attorneys' negligence in ignoring his consistent and strategic requests to ask questions of the witnesses; and was precluded in crafting and endorsing his pre-indictment delay motion.

13

Retained counsel and appointed counsel are regarded dissimilar under the law. The Sixth Amendment right to counsel is recognized to include a right to retain counsel of choice. The erroneous denial of counsel of choice constitutes structural error. The Petitioner bore the burden of demonstrating proper grounds for the appointment of new counsel. If an accused alleges facts which, if true, would require relief, the trial court shall inquire into the accused complaint and make the inquiry part of the record.

The Petitioner furnished a prolix explanation for the court to absolve a court-appointed attorney where a clear breakdown in the attorney-client relationship of such itemized magnitude communicated to the court, jeopardized the Petitioner's right to a fundamental fair trial. The odds between Petitioner and his counsel, under such calamitous circumstances shall be granted an order to appoint new counsel, or allowed the Petitioner to retain counsel of his choosing.

**GROUND EIGHT**: The Petitioner was denied due process of law when the convictions were not supported by sufficient evidence due to a deficiency of identification testimony.

**Supporting Facts**: The Petitioner testified to his prior sexual relationship with T.B. The alleged incident could not be testified by T.B. of her own reminiscence; T.B. merely relied on DNA in view of the fact that "DNA don't lie." The DNA essentially tender the testimony and facts that T.B. and the Petitioner, at one point in time, had sexual relations and do not irrefutably establish that there was a forcible rape or kidnapping. The Petitioner testified that there was consensual sex between him and T.B. on many occasions, including close proximate time when DNA was extracted from T.B. There was no convincing rebuttal to these facts. It was also testified that T.B. had reason to lie after the Petitioner did not return the $2,200 owed to her.

Undeniably, the legal standard which applied to determine sufficient evidence, that is - whether the evidence is legally sufficient to support the jury verdict as a matter of law: The notion that the "DNA don't lie" is not an accurate scientific fact. The DNA might have been present due to secondary transfer, or by means of consensual sex. Therefore, the evidence suggesting reasonable doubt blends the insufficient identification of the Petitioner as a perpetrator of this alleged offense.

**GROUND NINE**: The Petitioner was denied due process of law when the trial court erred when it tried Williams as an adult without any bindover proceedings when he was seventeen years old at the time of the alleged offenses.

**Supporting Facts**: The indictment alleged that the incident occurred on May 18, 1997. The Petitioner date of birth is August 28, 1979. Fittingly, the Petitioner was under the age of eighteen years old making him seventeen years old. The Juvenile Court has exclusive jurisdiction over a child, who is alleged to be delinquent for having violated any law, ordinance, or express provision -The Petitioner shall have deemed to be a child irrespective of his age at the time the complaint with the violated subject-matter was filed or when the hearing of the complaint was held.

The Petitioner cannot point to any specific instance of being taken in custody for this offense before he turned twenty-one years old. Yet, the Petitioner had been taken into custody several occasions after the alleged offenses in 1997. At no time, did the State identify Petitioner's DNA as being associated with a rape.

**GROUND TEN**: The Petitioner sets herein a liberty interest that definitively resolve whether there is a federal constitutional right to be released upon actual innocence.

**Supporting Facts**: The Petitioner's claim of actual innocence does not stand-alone and is supported by substantive claims postulated herein and is therefore cognizable in this habeas corpus action.

(Doc. No. 1.)

On August 25, 2020, Warden Jeff Noble ("Respondent") filed the Return of Writ. (Doc. No. 11.) Williams filed a Traverse on November 9, 2020. (Doc. No. 16.)

### III. Exhaustion and Procedural Default

**A.    Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with

15

the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the stat"'s "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

16

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

**B.     Application to Petitioner**

Respondent argues Grounds Two through Ten are procedurally defaulted because Williams failed to appeal these issues to the Supreme Court of Ohio. (Doc. No. 11 at 30.) Respondent asserts Williams cannot show cause and prejudice or a miscarriage of justice to excuse the default. (*Id.*) First, Williams had no right to counsel on discretionary appeal, and so he cannot claim ineffective assistance of counsel as cause to excuse the failure to raise these grounds on appeal. (*Id.*) Second, Williams has not raised any ineffective assistance of appellate counsel claim for failure to raise these issues on appeal. (*Id.*) Nor can Williams show that he is actually innocent and that the procedural default must be excused to prevent a miscarriage of justice. (*Id.* at 31.)

 Williams maintains he was never given notice that appellate counsel was representing him before the Supreme Court of Ohio, nor did Williams give permission for appellate counsel to do so. (Doc. No. 16 at 57.) Williams asserts appellate counsel failed to notify him of the state court of appeals decision and did not consult with Williams about representation before the Supreme Court of Ohio and "objectives to be pursued." (*Id.* at 59.) Williams argues it was not until four months after appellate counsel entered an appearance and filed a Notice of Appeal that appellate counsel sent Williams a copy of the appearance and the Notice of Appeal. (*Id.*)

18

A careful review of the record reveals that while Williams raised these claims to the state appellate court, he failed to present these claims to the Supreme Court of Ohio.  (Doc. No. 11-1, Ex. 18, 23.)  While Williams raised these grounds in a motion for delayed appeal, the Supreme Court of Ohio denied his motion for delayed appeal.  (Doc. No. 11-1, Ex. 27-28.)

The Court finds Williams' failure to appeal these issues to the Supreme Court of Ohio, coupled with the Supreme Court of Ohio's denial of a motion for delayed appeal, resulted in a procedural default. Therefore, all grounds except for Ground One are procedurally barred unless Williams "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

### a.  Cause and Prejudice

While the ineffective assistance of counsel can normally provide cause to excuse procedural default, "attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal." *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio Dec. 13, 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 751-53 (1991)).  Here, Williams had no constitutional right to counsel on a discretionary appeal to the Supreme Court of Ohio. *Tanner v. Jeffreys*, 516 F. Supp. 2d 909, 916 (N.D. Ohio Oct. 19, 2007) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).  Thus, any purported failure of his attorney in failing to raise certain issues on appeal to the Supreme Court of Ohio cannot serve as cause to excuse the procedural default.

As Williams fails to show cause, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. at 533–34.

### a.  Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623.  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Id*. at 316.

Here, while Williams argues he is actually innocent, he fails to present any new, reliable evidence of his innocence.  Therefore, the Court finds Williams has failed to demonstrate the procedural default of Grounds Two through Ten should be excused on the basis of actual innocence.

### IV. Non-cognizability

In Ground Ten, Williams asserts a free-standing claim of actual innocence.  (Doc. No. 1 at 16.) Respondent asserts that the United States Supreme Court has not recognized a free-standing claim of actual innocence, and so this claim is not cognizable on federal habeas review.  (Doc. No. 11 at 31-32.)

The Sixth Circuit repeatedly has held that actual innocence is not cognizable as a free-standing habeas claim, particularly in the context of non-capital proceedings. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007). *See also Thomas v. Perry*, 553 F. App'x 485, 486 (6th Cir. 2014) ("Thomas' freestanding claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review"); *Sitto v. Lafler*, 279 F. App'x 381, 382 (6th Cir. 2008) ("[W]e continue to adhere to the rule that a free-standing innocence claim is not cognizable for habeas review"); *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent."); *Hoop v. Jackson*, No. 1:06-cv-603, 2015 WL 6735895, at *22 (S.D. Ohio Nov. 4, 2015) ("Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim."); *Carter v. Bradshaw*, No. 3:02CV524, 2015 WL 5752139, at *51 (N.D. Ohio Sept. 30, 2015); *Keenan v. Bagley*, No. 1:01 CV 2139, 2012 WL 1424751, at *48 n.28 (N.D. Ohio April 24, 2012); *Johnson v. Kelly*, No. 1:13 CV 1381, 2015 WL 1298711, at *11 (N.D. Ohio March 23, 2015) (adopting report and recommendation). Therefore, in addition to being procedurally defaulted, Ground Ten is non-cognizable on federal habeas review.

## V. Review on the Merits

### A.    Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a

22

state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

In his first ground, Williams asserts he was denied due process of law when he suffered "actual prejudice" as a result of the pre-indictment delay.  (Doc. No. 1 at 6.)  Williams argues he was not required to show the lost evidence resulting from the delay was exculpatory; rather, he just needed to show "the lost evidence would render some assistance in defending the charges."  (*Id.*)  Williams maintains there were

two witnesses who were unavailable as a result of the delay: "Sam" and Wayne.  (*Id.* at 7.)  Williams

asserts Sam "could have testified to the demeanor of" the victim, while Wayne "could have provided a

substantive amount of exculpatory evidence."  (*Id.*)  In addition, the victim could not make an

identification from a photo array, and Williams argues the victim based her claims on the DNA evidence.

(*Id.*)  Finally, Williams asserts "[t]he record and witnesses from [the victim's] job was [sic] out of reach to

be subpoenaed due to the passage of time."  (*Id.*)

Respondent argues that Williams is limited to the same factual and legal theories presented to the

state courts, and any other theories are procedurally defaulted.  (Doc. No. 11 at 26.)  Respondent maintains

the state appellate court's decision was not contrary to or an unreasonable application of United States

Supreme Court precedent or an unreasonable determination of the facts of record.  (*Id.* at 28.)

In his Traverse, Williams argues the state appellate court decision involved an unreasonable

determination of the facts in the case, in addition to being contrary to or an unreasonable application of

United States Supreme Court precedent.  (Doc. No. 16 at 34-36.)  Williams maintains that Sam "was

evidence to factors consistent with circumstances surrounding [the victim's] allegations: whether [the

victim] was crying, erratic; whether her actions were consistent with someone who just engaged in

consenual [sic] activity or upset and abrasive."  (*Id.* at 45) (citations omitted).  Williams argues that

Wayne, who died in 2012, "was a witness to the relationship and consensual encounters between [the

victim] and Williams."  (*Id.* at 47.)

Williams raised a pre-indictment delay claim to both the state appellate court and the Supreme

Court of Ohio.  (Doc. No. 11-1, Ex. 18, 23.)  The state appellate court considered this claim on the merits

and rejected it as follows:

> {¶ 20} In the first assignment of error, Williams claims that the trial court erred in
> denying his motion to dismiss due to preindictment delay.
>
> {¶ 21} We apply a de novo standard of review to the legal issues but afford great
> deference to findings of fact made by the trial judge when reviewing a trial court's

24

decision on a motion to dismiss for preindictment delay. *State v. Tate*, 2016-Ohio-5622, 70 N.E.3d 1056, ¶ 18 (8th Dist.), citing *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034.

{¶ 22} The statute of limitations governing a particular crime provides the "primary guarantee against bringing overly stale criminal charges." *State v. Copeland*, 8th Dist. Cuyahoga No. 89455, 2008-Ohio-234, ¶ 10, citing *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Nonetheless, the delay between the commission of an offense and an indictment can, under certain circumstances, constitute a violation of due process of law guaranteed by the federal and state constitutions. *State v. McDonall*, 8th Dist. Cuyahoga No. 105787, 2018-Ohio-2065, ¶ 27; *see also State v. Luck*, 15 Ohio St.3d 150, 154, 472 N.E.2d 1097 (1984); *Lovasco* at 789, 97 S.Ct. 2044. For instance, a delay in commencing prosecution is not justified when the state uses the delay to gain a tactical advantage or through negligence or error ceases its investigation and then later, without new evidence, decides to prosecute. *Luck* at 158, 472 N.E.2d 1097.

{¶ 23} The statute of limitations for rape and kidnapping is 20 years. R.C. 2901.13(A)(3). Here, it is undisputed that Williams was indicted within the statute of limitations for rape and kidnapping.

{¶ 24} Courts apply a two-part test to determine whether preindictment delay constitutes a due process violation. The burden is first on the defendant to present evidence of actual prejudice; once a defendant does so, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 702 N.E.2d 1199 (1998). A court must determine whether the defendant has established actual prejudice to his or her ability to defend him or herself before independently determining whether the state met its burden of establishing a justifiable reason for the delay in bringing charges. *State v. Hunter*, 8th Dist. Cuyahoga No. 104789, 92 N.E.3d 137, 2017-Ohio-4180, ¶ 11, citing *Jones* at ¶ 16-18, 29.

> A determination of actual prejudice involves "'a delicate judgment'" and a case-by-case consideration of the particular circumstances. A court must "consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." [The Ohio Supreme Court] has suggested that speculative prejudice does not satisfy the defendant's burden.

> The "possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." Those are "the real possibilit[ies] of prejudice inherent in any extended delay," and statutes of limitations sufficiently protect against them. That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement.

(Citations omitted.) *Jones* at ¶ 20-21.

{¶ 25} At the hearing on the motion to dismiss, Williams argued that he suffered actual prejudice because Sam, the man T.B. testified helped her after the rape, and the car used in the crime were unavailable.

{¶ 26} While a defendant is not required to articulate specifically what the testimony of a missing witness would have been, he or she is required to provide an explanation of what exculpatory testimony the witness might have offered. *Jones* at ¶ 28, citing *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 103. A defendant must demonstrate a viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case. *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176, ¶ 5, citing *State v. Richardson*, 2016-Ohio-5843, 70 N.E.3d 1175, ¶ 13 (8th Dist.).

{¶ 27} Although Williams claims he suffered actual prejudice, as the state pointed out during the hearing on the motion to dismiss, Williams failed to show that Sam was unavailable to serve as a witness and did not offer an explanation of what exculpatory testimony Sam might have offered. In fact, Williams's attorney admitted that she could only speculate as to what Sam's testimony might have been and Sam's testimony "may not have necessarily helped Mr. Williams, but it sure may have. We don't know."

{¶ 28} Williams also argued that had there not been a delay in indicting him the police could have tested the car where the rape occurred for fluids. Again, the possibility that the car could have served as evidence is insufficient to show actual prejudice, especially since Williams claimed he had consensual sex with T.B.

{¶ 29} For the first time on appeal, Williams claims he can show actual prejudice because Wayne, whom Williams testified was with him when he picked T.B. up from work, would have testified that the sex between T.B. and Williams was consensual. According to Williams, Wayne died in 2012. Williams, however, failed to argue at the motion hearing that he suffered prejudice due to Wayne's unavailability. Therefore, his argument as to Wayne is waived. Williams also claims for the first time on appeal that he can no longer subpoena T.B.'s timesheet and work hours for May 18, 1997, because the restaurant she worked at went out of business. But Williams has likewise waived this argument because he did not raise this issue at the hearing on the motion to dismiss.

{¶ 30} Even if these arguments were not waived, we do not find that they rise to the level of actual prejudice. Williams testified that he did not know Wayne's last name or where he lived in 1997, only that he died in 2012. He further testified that although Wayne would testify that the sex he (Williams) had with T.B. was consensual, Wayne was not in his house when he allegedly had consensual sexual intercourse with T.B. — Wayne was in the car. Williams also has not explained how T.B.'s timesheet would serve as exculpatory evidence, because, under both his theory and the state's theory of the case, T.B. was at work before the incident occurred.

{¶ 31} Consequently, Williams did not meet his burden of showing actual prejudice and the trial court did not err in denying his motion to dismiss.

{¶ 32} The first assignment of error is overruled.

*State v. Williams*, 2018 WL 4043306, at **3-5.

At the outset, the Court notes that Williams has neither alleged nor established a violation of his Sixth Amendment right to a speedy trial.  As the Supreme Court has explained, it is "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular provision of the Sixth Amendment."  *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  *See also Parker v. Burt*, 595 F. App'x 595, 600 (6th Cir. 2015) ("[T]he Sixth Amendment's Speedy Trial Clause protects against excessive postindictment delay."); *White v. Warden, Chillicothe Corr. Institution*, 2018 WL 3389908, at *12 (S.D. Ohio July 12, 2018) ("The Speedy Trial Clause of the Sixth Amendment is not triggered until a formal indictment or information is filed or the "actual restraints imposed by arrest and holding to answer a criminal charge" have occurred.").  Here, Williams has not alleged his constitutional rights were violated by any delay between his indictment and trial.  Rather, Ground One asserts a constitutional violation based on the delay between the alleged offenses and the indictment and, therefore, states a claim under the Due Process Clause.

The United States Supreme Court has found that the Due Process Clause of the Fifth Amendment requires the dismissal of charges based on pre-indictment delay only where it is shown that the delay caused "substantial prejudice" to the Petitioner's rights to a fair trial and was an "intentional device to gain tactical advantage over the accused."  *Marion*, 404 U.S. at 322.  *See also United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).  Consistent with this Supreme Court authority, the Sixth Circuit has held that "dismissal for pre-indictment delay is warranted only when the defendant shows (1) substantial prejudice to his right to a fair trial and (2) that the delay was an intentional device by the government to gain a tactical advantage."  *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992)

(internal quotation marks omitted) (alterations in original).  *See also Parker,* 595 F. App'x at 601; *Wolfe v. Bock*, 253 F. App'x 526, 531-532 (6th Cir. 2007); *McKissic v. Birkett*, 200 F. App'x 463, 469–70 (6th Cir. 2006).

Regarding the first element, federal courts have explained that mere speculation is insufficient to show substantial prejudice.  *See, e.g., Marion*, 404 U.S. at 325-326 (finding the possibility "that memories will dim, witnesses become inaccessible, and evidence be lost" is not sufficient to show prejudice from the delay); *Gales v. Clipper*, 2018 WL 2473672, at *8 (N.D. Ohio May 15, 2018) (habeas petitioner failed to show prejudice where "he did not detail what the witnesses, whose memories are alleged to have faded, would have testified to"); *Randle v. Jackson*, 544 F. Supp. 2d 619, 631 (E.D. Mich. 2008) (finding "a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish actual prejudice from a pre-charge delay").

Regarding the second element, it is well-established that a delay resulting from investigative efforts "does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time."  *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986) (citations omitted), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *see also United States v. Rogers*, 118 F.3d 466, 476 (6th Cir. 1997).  As the Supreme Court has explained:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion*, 404 U.S., at 324, 92 S.Ct., at 465, precisely because investigative delay is not so one-sided. [footnote omitted]. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed," *Smith v. United States*, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959). This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

28

*Lovasco*, 431 U.S. at 795.  Moreover, where the pre-indictment delay is caused merely by negligence on the part of prosecutors or police, no due process violation exists.  *See e.g., Rogers*, 118 F. 3d at 476 (rejecting the argument that "reckless or negligent disregard of a potentially prejudicial circumstance violates the Fifth Amendment guarantee of due process"); *United States v. Banks*, 27 F. App'x 354, 357 (6th Cir. 2001) ("Our Circuit has recognized that where delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process violation exists.").

In sum, "[a] defendant bears a 'heavy burden' on a claim that a pre-arrest delay violated due process." *Mayes v. Hoffner*, 2016 WL 3385084 (E.D. Mich. June 20, 2016).  Indeed, the Sixth Circuit has explained that "[t]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." *Rogers*, 118 F.3d at 477, n.10.  *See also Miracle v. Haas*, 2016 WL 1583807, at *7 (E.D. Mich. April 20, 2016).

In the instant case, the state appellate court reasonably concluded that Williams failed to show that the State's delay in charging him violated his due process rights.  The state appellate court applied the correct standard to Williams' claim, observing that a due process violation based on pre-indictment delay requires a showing both of substantial prejudice and that there was no justifiable reason for the delay. *State v. Williams*, 2018 WL 4043306, at *4.  The state appellate court then determined Williams had failed to show substantial prejudice.  *State v. Williams*, 2018 WL 4043306, at *5.  The court noted Williams failed to show Sam was unavailable, he failed to demonstrate what exculpatory evidence Sam would provide, and even if Williams had not waived his arguments regarding Wayne and the victim's work records, he could not show prejudice since Williams testified Wayne was in the car while he and the victim had sex inside the house and the incident occurred after the victim got off of work.  (*Id.*)

Williams has failed to show the state appellate court's decision is contrary to or an unreasonable application of clearly established federal law.  First, Williams has not demonstrated that the state appellate

court unreasonably determined he failed to show actual prejudice. Williams has not shown that Sam was unavailable, nor has he shown that Sam would provide testimony that would aid his defense was more than speculative. The record from the trial court hearing on Williams' motion to dismiss shows the following exchange between the trial court and defense counsel:

> MS. ARBIE-McCLELLAND: Correct. And had that information been provided to the police department back in 1997, the investigation into Sam could have happened, not just through defense counsel, but through the Cleveland Police Department. They could have said, What happened, Sam, independent person here, witness? It may not, you know, admittedly, it may not have necessarily helped Mr. Williams, but it sure may have. We don't know. There's your actual prejudice. We don't even know Sam's last name.

> THE COURT: Isn't that speculation?

> MS. ARBIE-McCLELLAND: It's some speculation, but we can't answer that question specifically because we don't know. We don't even know Sam's last name to this day. Some vague person named Sam may have been able to have been found way back when, 10 years ago, 20 years ago. But there's a witness, there's a person in the cycle who's gone, just disappeared. What could he have provided? He could have provided what was her demeanor; what's going on; why did you take her; what happened on that night that you took her home? Did she come to the door frantic, or did she come to the door being like an entirely different person?

> There's speculation involved here, but that's not Mr. Williams' fault. The speculation that we are stuck with is because the State of Ohio comes up 20 years later and says, here we go, we have DNA.

(Doc. No. 11-2 at 12-13.)

Similarly, Williams has not shown prejudice from the unavailability of the victim's work records when the incident took place after she had finished work, nor from the unavailability of Wayne, who Williams testified was in the car while Williams and the victim had consensual sex inside the house.

As noted above, federal courts have rejected claims of pre-indictment delay based on speculative and unsupported assertions of prejudice. *See e.g., Marion*, 404 U.S. at 325-326 (finding the possibility "that memories will dim, witnesses become inaccessible, and evidence be lost" is not sufficient to show prejudice from the delay); *Gales*, 2018 WL 2473672, at *8 (habeas petitioner failed to show prejudice

where "he did not detail what the witnesses, whose memories are alleged to have faded, would have testified to"); *Randle*, 544 F. Supp. 2d at 631 (finding "a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish actual prejudice from a pre-charge delay").

Accordingly, and for all the reasons set forth above, the Court finds Williams has not shown that the state appellate court decision was contrary to or an unreasonable application of clearly established federal law or otherwise establish a constitutional violation.  Ground One, therefore, fails on the merits.

## V.   Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date: August 25, 2022                                    *s/ Jonathan Greenberg*
                                                          Jonathan D. Greenberg
                                                          United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**